UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JAMES POLK,                                        :
                                                   :
                          Plaintiff,               :
                                                   :
              v.                                   :          26-CV-5 (SFR)
                                                   :
ANGEL QUIROS, *et al*,                             :
                                                   :
                          Defendants.              :
------------------------------------------------------------------ x

## **<u>INITIAL REVIEW ORDER</u>**

Plaintiff James Polk, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se* under 42 U.S.C. § 1983 against nine prison officials.[2] The Complaint alleges that Defendants violated Polk's constitutional rights by refusing to reinstate employment that he lost after another inmate assaulted him and by refusing to return him to the Honor Block. The Complaint seeks damages (in the form of back wages) and injunctive relief. For the reasons explained below, the Complaint is dismissed without prejudice and with leave to amend.

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function shows that Polk was sentenced in 2015 and is now housed at Cheshire Correctional Institution.

[2] The Complaint asserts claims against nine Defendants: Commissioner of Correction Angel Quiros, Warden Jennifer Reiss, Supervisor of Industries Tim Boynton, Market Shop Supervisor Scott Lang, Sign Shop Supervisor Colby Beecher, A/P Officer Manillo, Deputy Warden Carlos Nunez, Deputy Warden Soley, and Captain Ciarlo. Compl. 3-5. A tenth defendant is identified only as "Population Management (NU)." To the extent Polk seeks to assert a claim against this tenth defendant, the Amended Complaint should identify this defendant by name or if Polk cannot identify the defendant, he should be listed as a "John Doe" defendant.

1

## I.    <u>BACKGROUND</u>

I accept as true the following well-pleaded facts in the Complaint. In April 2024, Michael Foster (another prisoner) assaulted Polk while Polk was working in the sign shop at Cheshire Correctional Institution ("Cheshire"). Compl. 4, ¶ 1, ECF No. 1. Polk reported the assault to his supervisor. *Id*. ¶ 2. Prison officials disciplined Foster. *Id*. ¶¶ 2-3. Polk and Foster each signed statements "saying that neither wanted a profile on the other." *Id*. ¶ 3.

One week after the assault in the sign shop, prison officials told Polk he was being transferred to MacDougall Correctional Institution ("MacDougall"). *Id*. ¶ 4. When Polk asked a supervisor why he was being transferred, the supervisor told Polk, "Cheshire is a Man's Prison and when a man gets pushed he fights." *Id*. Once at MacDougall, Polk filed a grievance asking prison officials to return him to Cheshire and reinstate his employment at the sign shop. *Id*. Shortly after filing the grievance, prison officials transferred Polk back to Cheshire and placed him in the East Block. *Id*. at 6, ¶ 5. Polk thereafter filed a grievance asking prison officials to return him to the Honor Block and reinstate his employment. *Id*. Correctional Officer Manillo informed Polk that Polk would not be returning to the Honor Block or his previous employment. *Id*. ¶ 6. When Polk asked Manillo if Polk was "being punished for complying with DOC rules," Manillo told Polk, "I guess you can look at it that way." *Id*. ¶¶ 6-7.

In May 2024, Polk wrote to Deputy Warden Soley asking for her help. *Id*. ¶ 7. Deputy Warden Soley told Polk that she would move Polk to the Honor Block and would speak to Industry Supervisor Boynton about reinstating Polk's employment. *Id*. ¶¶ 7-8. When nearly one month passed without hearing from Soley, Polk wrote to her again asking if she could reinstate his employment, even if he could not return to the Honor Block. *Id*. ¶¶ 8-9. Soley

responded that Polk was on a waiting list to be hired at the sign shop, and if the sign shop wanted to hire Polk again, the sign shop could hire Polk while he was housed in the East Block. *Id*. ¶ 9.

Prison officials later summoned Polk to the counselor's office to speak to the Honor Block unit manager, Captain Ciarlo. *Id*. ¶¶ 9-10. Ciarlo told Polk that someone had emailed the DOC Commissioner about reinstating Polk's employment and returning him to the Honor Block. *Id*. ¶ 10. Ciarlo told Polk that she was not going to return him to the Honor Block because "it was too soon after the incident," and that Polk had been placed on a waiting list to be hired at the sign shop but they were not hiring. *Id*. at 7. Polk explained to Ciarlo that he "discerned that this was retaliation for the pending litigation that [Polk] . . . had filed against the Medical Department." *Id*. When Polk asked the unit manager for the "official reason" Polk was transferred to MacDougall, the unit manager told Polk that she did not know. *Id*.

Polk wrote to Commissioner Quiros to complain about the above events and to request an investigation. *Id*. Polk also wrote to Soley, who responded to Polk's correspondence by stating that, "You have obtained a job in Commissary and are appropriately housed." *Id*.

Polk seeks (1) reinstatement of his employment at the sign shop with "full back pay (including all overtime)"; (2) placement in the Honor Block; (3) single-cell status; and (4) "assur[ances] that there will be no further retaliation against [him]." *Id*. at 6.

## II.    **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which an incarcerated plaintiff seeks redress from a governmental entity or officer and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28

3

U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and internal quotation marks omitted).

## III.    DISCUSSION

Polk does not identify which provision of federal law or the Constitution that Defendants violated. To the extent Polk maintains that Defendants violated Polk's federally protected rights by refusing to reinstate his employment at the Cheshire sign shop, "[i]t is well-established that inmates have no constitutionally protected property or liberty interest in an assignment to a prison job." *Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2021 WL 3493621, at *9 (D. Conn. Aug. 9, 2021) (collecting cases). And to the extent that Polk maintains that Defendants violated Polk's federally protected rights by refusing to return him to the Honor Block, it is equally well-established that "[i]nmates do not have a right to be housed at a specific facility or in a specific type of housing." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 339 (D. Conn. 2015) (collecting cases).

I therefore analyze whether Polk can state a First Amendment retaliation claim based

4

on his loss of a prison job and loss of his position in the Honor Block. To state a First Amendment retaliation claim under section 1983, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citation and internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id*. at 295 (internal quotation marks and citation omitted).

I construe Polk to assert two separate retaliation claims predicated on two different forms of protected speech or conduct: first, relating to Polk's suit against the "Medical Department,"[3] and second, relating to Polk's decision to report his assault to Supervisor Colby Beecher, Compl. 4, ¶ 2. As I explain, I cannot conclude from the current record that the adverse actions described in the Complaint were causally connected to either form of protected speech.

### A.    Retaliation for Polk's Pending Lawsuit

The first requirement for a retaliation claim is clearly satisfied because it is well established that "the filing of a lawsuit or a grievance is protected conduct." *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025). Thus, Polk's assertion that prison officials would not reinstate his employment in "retaliation for the pending litigation that [Polk] had filed against

---

[3] I assume that this is a reference to *Polk v. Fisher*, No. 3:23-cv-728 (SFR), 2025 WL 969665 (D. Conn. Mar. 31, 2025).

the Medical Department," Compl. 7, satisfies the first element. The same assertion also satisfies the second element because "removal from a prison job may constitute adverse action under certain circumstances." *Gill v. Calescibetta*, No. 9:00-CV-1553 GTS/DEP, 2009 WL 890661, at *3 (N.D.N.Y. Mar. 31, 2009).

But to state a First Amendment retaliation claim, Polk must also allege facts satisfying the third element—"that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted). Polk must allege facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Lewis v. Stango*, No. 3:22-CV-1248 (OAW), 2023 WL 4684666, at *6 (D. Conn. July 21, 2023) (cleaned up). In other words, Polk must allege facts suggesting that his lawsuit against the "Medical Department" was a substantial or motivating factor in prison officials' refusal to reinstate his employment. "[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004). "[W]ide-ranging speculation about what may have motivated [a defendant] to act . . . [w]ithout some proof in the record that [a defendant] possessed retaliatory animus toward" the plaintiff is insufficient to establish a causal connection between the protected speech and the adverse action. *Deters v. Lafuente*, 368 F.3d 185, 190 (2d Cir. 2004).

Here, Polk maintains that he "*discerned*" that prison officials' refusal to reinstate his employment "was retaliation for the pending litigation." Compl. 7 (emphasis added). But Polk does not allege that any of the Defendants in this action knew he had brought an action against the Medical Department. Nor does Polk explain why any of the Defendants named here might seek to retaliate against him because of his prior action against other individuals. This omission

is significant because "[t]he Second Circuit as well as other district courts within the Circuit have observed that it is difficult to establish one defendant's retaliation for complaints against another defendant." *Dixon v. Lupis*, No. 3:20-CV-1754 (VLB), 2021 WL 4391246, at *9 (D. Conn. Sept. 24, 2021) (cleaned up) (collecting cases).

As such, Polk has failed to plead facts suggesting a causal connection between Polk's protected speech and any adverse action. I therefore dismiss this First Amendment retaliation claim without prejudice and with leave to amend. 28 U.S.C. § 1915A(b)(1).

**B.        Retaliation for Reporting Assault to Prison Staff**

I separately analyze whether Polk can state a First Amendment retaliation claim predicated on the claim that he was transferred to MacDougall and lost his prison job for "complying with DOC rules" and reporting that he had been assaulted by Foster. Compl. 6, ¶ 6. Although this predicate for a retaliation claim is not clearly articulated in the Complaint, I analyze it here consistent with the Second Circuit's instruction that *pro se* pleadings should be "construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman*, 470 F.3d at 474.

I assume that reporting an assault by a fellow prisoner is conduct protected by the First Amendment. *Cf. Dolan*, 794 F.3d at 294-95 (describing the rights of incarcerated people to petition for redress on behalf of themselves and on behalf of the prison population). And as I explained previously, the Complaint satisfies the adverse action requirement insofar as it states that Polk was transferred to a less-desirable cellblock and lost his prison employment. But I cannot conclude from the current record that these adverse actions were substantially caused by Polk's protected speech or conduct. To be sure, the Complaint states that, after Polk asked Manillo whether Polk was being punished "for complying with the DOC mandated rules o[f]

7

conduct," Manillo responded by saying, "I guess you can look at it that way." Compl. 6, ¶ 7. And when Polk was waiting to be transferred, Lang told Polk "Cheshire is a Man's Prison and when a man gets pushed he fights." *Id.* at 4, ¶ 4. These allegations suggest that Lang and Manillo believed that Polk did not need to involve prison officials in his dispute with Foster. But these allegations do not support the inference that Lang and Manillo specifically—or indeed any of the Defendants named here—sought to transfer Polk from Cheshire to MacDougall as punishment for Polk reporting Foster's conduct to officials. Indeed, the Complaint does not identify who Polk believes was responsible for the decision to transfer him to another facility in retaliation for his protected conduct.

For these reasons, I conclude that a retaliation claim predicated on Polk's complaint about the assault must also be dismissed without prejudice and with leave to amend.

## IV.    **CONCLUSION AND ORDERS**

Based on the foregoing, the Complaint is DISMISSED without prejudice and with leave to amend. If Polk wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed to attempt to state a viable claim, he may file an Amended Complaint on or before June 30, 2026. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. If Polk does not file an Amended Complaint on or before June 30, 2026, the Court will direct the Clerk of Court to close this case.

<b>SO ORDERED.</b>

New Haven, Connecticut
May 28, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

8